## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TERESA SMITH,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CIVIL ACTION NO. 3:22-cv-00089

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

In this matter, the plaintiff, Teresa Smith, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On January 16, 2020, Smith protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of December 10, 2019. Her claims were

initially denied by state agency reviewers on October 26, 2020, and upon reconsideration on February 3, 2021. The plaintiff then requested an administrative hearing.

A hearing was held on May 9, 2021, before an administrative law judge, Gwendolyn M. Hoover (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Sheryl Bustin. The plaintiff was represented by counsel at the hearing.

On June 15, 2021, the ALJ denied Smith's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Smith was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Smith had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Smith had the severe impairments of: lumbar degenerative disc disease; hearing impairment with vertigo; depressive disorder; and anxiety disorder.

At step three, the ALJ found that Smith did not have an impairment or combination of impairments that meets or medically

equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 2, 2021).[1] In doing so, the ALJ considered Smith's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in three functional areas—(1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself—and mild limitations in the fourth area—understanding, remembering, or applying information. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04 and 12.06, the ALJ also considered whether Smith's mental disorders were "serious and persistent," finding that her

---

[1] We note that the agency's list of musculoskeletal disorders was extensively revised while this plaintiff's application for disability and disability benefits was pending before the agency. Because the ALJ's final decision was issued *after* the effective date of this revision, the revised list of musculoskeletal disorders was applied. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164, 78164 & n.2 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Smith's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Smith had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [The claimant] is limited to never climbing ladders, ropes or scaffolds; never crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching; avoiding concentrated exposure to extreme cold, wetness, vibration, and hazards, such as unprotected machinery and heights. She could hear and understand simple oral instructions and

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

communicate simple information and can use a
telephone to communicate. She can tolerate no more
than moderate levels of noise as defined in Appendix D
of the SCO.[3] She must avoid work outdoors in bright
sunshine or bright, flickering lights such as welding or
cutting metal. She can tolerate occasional changes in
the work setting and can make simple work related
decisions. She is limited to occasionally interacting
with the public.

(Tr. 20.)

In making these factual findings regarding Smith's RFC, the ALJ
considered her symptoms and the extent to which they could reasonably
be accepted as consistent with the objective medical evidence and other
evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec.
Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also
considered and articulated how persuasive she found the medical
opinions and prior administrative medical findings of record. *See
generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational
expert, the ALJ concluded that, since her alleged onset date, Smith was

---

[3] *See* U.S. Dep't of Labor, Selected Characteristics of Occupations
Defined in the Revised Dictionary of Occupational Titles app. D (1993)
(providing illustrative examples of moderate noise: "business office where
type-writers are used; department store; grocery store; light traffic; fast
food restaurant at off-hours"), Westlaw SCODICOT APP D.

unable to perform her past relevant work as a hair stylist or a combination of hair stylist and salon manager, as actually or generally performed.

At step five, the ALJ concluded that Smith was capable of performing work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Smith was capable of performing the requirements of representative occupations such as housekeeping cleaner (DOT # 323.687-014), bakery worker conveyor line (DOT # 524.687-022), or produce weigher (DOT # 299.587-010). Based on this finding, the ALJ concluded that Smith was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on December 1, 2021, making the ALJ's June 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on January 17, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed

their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Smith asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency medical and psychological consultants; (2) the ALJ failed to properly evaluate the medical opinions of her treating orthopedic surgeon; (3) the ALJ failed to properly evaluate the medical opinions of a consultative examining nurse practitioner; and (4) the ALJ failed to properly consider subjective evidence regarding Smith's symptoms, including statements or testimony by Smith herself.

## A. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)."[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d

780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in January 2020. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions,

the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416920c(b); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(b) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.*

§§ 404.1527(c)(4), 416.927(c)(4) (consistency).[4] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

---

[4] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### 1. Prior Administrative Findings

The prior administrative findings in this case included the opinions of a state agency psychological consultants, Karen Louise Plowman, Psy.D., recorded on September 30, 2020, and John David Gavazzi, Psy.D., recorded on January 19, 2021, and the opinions of a state agency medical consultants, David Edward Draper, M.D., recorded on October 23, 2020, and David Paul Hutz, M.D., recorded on February 2, 2021.

Based on her review of Smith's medical records, Dr. Plowman considered whether Smith's medically determinable mental impairments met or medically equaled the severity of the listed impairments, finding that Smith failed to satisfy the "B" or "C" criteria of the listings. Dr. Plowman found that Smith had no more than mild limitations in any of the four areas of mental functioning: she found that Smith had mild limitations in the area of understanding, remembering, or applying information and the area of concentrating, persisting, or maintaining pace; she found that Smith had no limitations in the area of interacting with others or the area of adapting or managing oneself. Based on the foregoing, Dr. Plowman concluded that any mental impairment was not severe. (Tr. 73–74, 87–88.)

Based on his review of Smith's medical records, Dr. Gavazzi reconsidered whether Smith's medically determinable mental impairments met or medically equaled the severity of the listed impairments, finding that Smith failed to satisfy the "B" or "C" criteria of the listings. Dr. Gavazzi found that Smith had no more than moderate limitations in any of the four areas of mental functioning: he found that she had moderate limitations in the area of interacting with others, the area of concentrating, persisting, or maintaining pace, and the area of adapting or managing oneself, and that she had mild limitations in the area of understanding, remembering, or applying information. Dr. Gavazzi evaluated Smith's mental residual functional capacity as well, finding that Smith was subject to moderate limitations in her ability to maintain attention and concentration for extended periods, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to respond appropriately to changes in the work setting, with

no other limitations noted. Ultimately, Dr. Gavazzi opined that Smith could "perform one- or two-step, routine tasks in a stable environment." (Tr. 105–06, 111–15, 128–29, 134–38.)

Based on his review of Smith's medical records, Dr. Draper found Smith was capable of performing light work with some postural, communicative, and environmental limitations. Dr. Draper found that Smith was capable of lifting or carrying up to 10 pounds frequently and up to 20 pounds occasionally. Dr. Draper found that Smith was capable of sitting, standing, or walking for up to six hours per 8-hour workday. He found that Smith could frequently climb ramps or stairs, but only occasionally balance, stoop, kneel, or crouch, and never crawl or climb ladders, ropes, or scaffolds. Dr. Draper noted that Smith had bilateral hearing limitations, but she was able to perform work with moderate hearing requirements. Dr. Draper found that Smith was subject to certain environmental limitations, including avoidance of even moderate exposure to noise and concentrated exposure to extreme heat or cold, wetness or humidity, fumes, odors, dusts, gases, poor ventilation, or hazards, such as machinery or heights, but no limitations with respect to vibration. (Tr. 75–77, 89–92.)

Based on his review of Smith's medical records on reconsideration, Dr. Hutz likewise found Smith was capable of performing light work with some postural, communicative, and environmental limitations, with some minor differences. Like Dr. Draper, Dr. Hutz found that Smith was capable of lifting or carrying up to 10 pounds frequently and up to 20 pounds occasionally, and that Smith was capable of sitting, standing, or walking for up to six hours per 8-hour workday. But Dr. Hutz found that Smith could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, and never climb ladders, ropes, or scaffolds. Dr. Hutz again noted Smith's bilateral hearing limitations. Dr. Hutz found that Smith was subject to certain environmental limitations, including avoidance of even moderate exposure to noise and concentrated exposure to extreme cold, wetness, vibration, or hazards, such as machinery or heights, but no limitations with respect to extreme heat, humidity, fumes, odors, dusts, gases, or poor ventilation. (Tr. 108–11, 131–34.)

In evaluating the medical opinions of the four state agency medical and psychological consultants, the ALJ found:

> The opinions of the State agency medical and psychological consultants are persuasive. They opined the claimant was limited to a reduce[d] range of light exertion with various postural and environmental

restrictions with no more than "mild" or "moderate" findings in the Paragraph B criteria. They opined the claimant could perform simple and routine tasks with moderate social restrictions. They did not quantify the social restriction in maximum capabilities. The State agency consultants are medical sources familiar with the disability evaluation process and its requirements. Further, their opinions are generally consistent with the medical evidence as a whole, including routine treatment, largely mild-to-moderate findings on diagnostic testing, and largely normal motor and neurological findings during examinations, as cited above. Moreover, their opinions are supported, as they described substantial medical evidence, including reports of performing numerous activities of daily living and the opinion and observations of [consultative examining psychologist] Dr. Trogner. For these reasons, their opinions are persuasive.

(Tr. 23–24 (citations omitted).)

The plaintiff contends that the ALJ erred in this analysis by considering the state agency consultants' familiarity with the social security disability program's policies and evidentiary requirements as a factor in determining the persuasiveness of their medical opinions. Citing 20 C.F.R. § 404.1520c(b)(3) and (c)(3), the plaintiff argues that the new regulations require the ALJ to follow a two-step process: (1) the ALJ must first consider the factors of supportability and consistency *exclusively*; and (2) the ALJ may then consider the other enumerated factors—the

medical source's relationship with the claimant,[5] the medical source's specialization, and any other factors that tend to support or contradict a medical opinion, including familiarity with the disability program's policies and evidentiary requirements—but *only* if the ALJ determines at the first step that two or more conflicting medical opinions are equally persuasive based on the factors of supportability and consistency.

The plaintiff's interpretation of the regulations is mistaken and explicitly contradicted by the text of the regulations themselves. While "[t]he factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions," 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), the regulations provide that the ALJ "will consider" *all five* enumerated factors, *id.* §§ 404.1520c(c), 416.920c(c). Because they are most important, the ALJ is expressly required to "explain how [he or she]

---

[5] Under the regulations, this factor includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the kind and extent of examinations and testing performed or ordered, and whether the medical source actually examined the claimant or just reviewed records. *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

considered the supportability and consistency factors," *id.* §§ 404.1520c(b)(2), 416.920c(b)(2), but the ALJ is not required to "articulate how [he or she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)" unless he or she finds that two or more conflicting medical opinions "about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section)," *id.* §§ 404.1520c(b)(3), 416.920c(b)(3). Or, as we have more succinctly summarized on other occasions: "In addition to consistency and supportability, the ALJ *must consider*—but need not explain—the medical source's relationship with the claimant, specialization, and any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *E.g.*, *Bordner v. Kijakazi*, Civil Action No. 3:20-CV-01165, 2022 WL 178818, at *4 (M.D. Pa. Jan. 18, 2022) (emphasis added); *accord Michelle K.*, 527 F. Supp. 3d at 482 ("The ALJ may—but is not required to— explain how he considered the remaining factors."). There is no error in the ALJ's consideration of the state agency consultants' familiarity with the social security disability program's policies and evidentiary requirements as a factor in determining the persuasiveness of their

medical opinions.

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical and mental limitations, including the medical opinions of the state agency medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. *Treating Orthopedic Surgeon Opinion*

On November 21, 2019, Smith's treating orthopedic surgeon, Steven J. Triantafyllou, M.D., completed a "Workers' Compensation Medical Status Report." Dr. Triantafyllou found that Smith was able to return to work that day, November 21, 2019, subject to several *permanent* work restrictions.[6] Dr. Triantafyllou indicated that Smith was permitted to lift up to 20 pounds to her waist occasionally, she could lift up to 5 pounds to her shoulder occasionally, and she was permitted to carry up to 10 pounds occasionally.[7] He indicated that Smith was limited to frequent standing, walking, stooping, twisting, and forward reaching, but

---

[6] We note that the record also contains previous reports describing temporary activity restrictions that applied while Smith recovered from her workplace injury.

[7] These limitations matched the requirements of her current job as a hair stylist, as reported by Dr. Triantafyllou.

only occasional sitting, repetitive bending at hips or knees, squatting, crouching, or overhead reaching.[8] Dr. Triantafyllou also instructed that Smith was restricted to working no more than five hours per workday, and no more than 25 hours per workweek. (Tr. 619, 961.)

Upon review, the ALJ found this medical opinion "somewhat persuasive." In particular, the ALJ found

> Although he is a treating specialist, his opinion is unsupported because he provides no clinical findings supporting the 25-hour restrictions. In addition, his opinion is inconsistent with Dr. Beutler's largely unremarkable exam in January 2020, which is merely one month after the alleged onset date. Notably, Dr. Triantafyl[l]ou specifically noted within his treatment notes that the five-hour maximum was due to the claimant becoming "quite symptomatic" at the five-hour mark. However, this is vague and does not account for the claimant's maximum ability at a reduced range of light exertion. Dr. Triantafyl[l]ou was merely addressing the demands of the claimant's current job as a hairdresser, which required stooping/leaning over in an awkward position to shampoo clients' hair. For these reasons, Dr. Triantafyl[l]ou's opinion is only somewhat persuasive.

(Tr. 24 (citations omitted).)

---

[8] Dr. Triantafyllou noted in his report that Smith's current job as a hair stylist required constant twisting and forward reaching and frequent repetitive bending at hips and knees, all of which exceeded her current status. All other limitations were consistent with the requirements of her job, as reported by Dr. Triantafyllou.

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well.

The plaintiff argues that the ALJ failed to properly consider medical and non-medical evidence that purportedly supports or is consistent with Dr. Triantafyllou's opinion, pointing to other medical evidence and opinions. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford*, 399 F.3d at 552 (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Moreover, none of this evidence is inconsistent with the ALJ's finding that the more extensive limitations in Dr. Triantafyllou's opinion were not supported by the objective medical evidence and were not consistent with evidence from other medical providers or other evidence in the record. While this same evidence might reasonably support a different conclusion as well, it does not compel it.

Accordingly, we find the ALJ's evaluation of the medical opinions of the plaintiff's treating orthopedic surgeon, Dr. Triantafyllou, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. Treating Neurosurgeon Opinion

On January 28, 2020, Smith was seen by her treating neurosurgeon, William J. Beutler, M.D., for complaints of continuing low back pain. Based on his examination of Smith and a review of medical records, Dr. Beutler noted that he "did not see an indication for surgical intervention," recommending continued conservative treatment instead, including physical therapy and pain treatments, possibly under the treatment of a physiatrist. In reaching this conclusion, Dr. Beutler referenced and endorsed the findings and work restrictions prescribed by Dr. Triantafyllou a few months earlier. In his treatment notes, Dr. Beutler commented:

> Dr. Triantafyllou in his note of November 21, 2019 describes the findings of the FCE [(functional capacity evaluation)]. He recommended permanent restrictions. I agree with these restrictions. On my review of the FCE she demonstrated a consistent effort during the functional capacity evaluation. The results indicate that she is not able to repetitively bend and twist. She would not be able to return to her duties as a

hairstylist. This restriction would be permanent.

(Tr. 675–76; Tr. 915–16; Tr. 926–27.)

Upon review, the ALJ found this medical opinion "somewhat persuasive." In particular, the ALJ found

> His opinion is somewhat supported by his exam confirming full motor strength in the extremities, intact coordination, intact sensation (less parasthesias in the left thigh), negative straight leg raises, and a normal gait. In fact, the only notable finding was a moderately decreased lumbar motion. It is also somewhat consistent with his recommendation for conservative treatment such as injections or therapy and that surgery was not warranted. Nevertheless, his opinion regarding agreeing with Dr. Triantafyl[l]ou's opinion of working merely five hours is wholly inconsistent with the numerous normal exam findings of no distress, unassisted ambulation, and intact motor function, as cited above. For these reasons, his opinion is only somewhat persuasive.

(Tr. 24–25 (citations omitted).)

Although she references Dr. Beutler's endorsement in connection with her discussion of the evaluation of Dr. Triantafyllou's prior medical opinion, the plaintiff has not separately challenged the ALJ's evaluation of this medical opinion by Dr. Beutler.

### 4. Consultative Examining Nurse Practitioner Opinion

On September 22, 2020, Smith was seen and examined by a consultative examining nurse practitioner, Karena Hammon, C.R.N.P.

On examination, Nurse Hammon observed that Smith appeared to be in no acute distress. In observing Smith's gait, Nurse Hammon observed that Smith had a short stride and was unable to walk on heels and toes without losing balance. Nurse Hammon observed that Smith presented with normal stance, and she was able to demonstrate a full squat, although this elicited low back pain. Nurse Hammon observed that Smith did not require the use of a cane or other assistive device, she needed no help getting on and off the exam table, and she was able to rise from a chair without difficulty. Nurse Hammon found no scoliosis, kyphosis, or abnormality in the thoracic spine. She noted that straight leg raise was negative bilaterally both seated and supine. Nurse Hammon observed no evidence of joint deformity, with joints stable and nontender. She observed no redness, heat, or effusion. Nurse Hammon found that Smith had zero positive trigger points for fibromyalgia. Nurse Hammon found deep tendon reflexes to be physiologic and equal in upper and lower extremities, with no sensory deficit and 5/5 strength in upper and lower extremities. She observed no cyanosis, clubbing, or edema of the extremities, physiologic and equal pulses, no significant varicosities or trophic changes, and no muscle atrophy. Nurse Hammon found Smith's

hand and finger dexterity to be within normal limits. She recorded diagnoses of degenerative discs of the lumbar spine with chronic back pain, fibromyalgia with chronic pain and fatigue, migraine headaches, depression and anxiety, and difficulty hearing, with a fair prognosis.

Nurse Hammon also completed an agency form report on Smith's ability to do work-related activities. She opined that Smith was capable of lifting or carrying up to 10 pounds occasionally due to chronic back pain status-post discectomy. Nurse Hammon found that Smith was capable of sitting up to 4 hours, standing up to 3 hours, and walking up to 2 hours in an 8-hour workday. She noted that Smith did not require the use of a cane to ambulate. Hannon found that Smith had no manipulative limitations with respect to her hands, but she was limited to frequent pushing or pulling of foot controls bilaterally. Hannon opined that Smith was limited to only occasional balancing, stooping, kneeling, crouching, crawling, or climbing of stairs, ramps, ladders, or scaffolds. Hannon noted that Smith was hearing impaired but retained the ability to hear and understand simple oral instructions and to communicate simple information or to use a telephone to communicate. Hannon found that Smith was subject to certain environmental limitations, including

no more than occasional exposure to unprotected heights, and no more than frequent exposure to moving mechanical parts, operating a motor vehicle, extreme cold or heat, vibrations, or loud noise. She opined that Smith was unable to walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 750–66.)

In evaluating the opinion of Nurse Hammon, the ALJ found that:

> The opinion of the consultative medical examiner, Karena Hammon, N.P., is somewhat persuasive. She opined the claimant was limited to a reduced range of sedentary exertion with sit-stand restrictions and various postural and environmental restrictions. Although the postural and environmental restrictions are generally supported by her exam of the claimant, including short stride and some balance deficits, the lifting, carrying, standing, walking, and sitting restrictions are unsupported. In fact, Nurse Practitioner Hammond observed the claimant with full motor strength, no sensory deficits, negative straight leg raises, a normal stance, and having no acute distress. Moreover, these exertional restrictions are inconsistent with the findings of the claimant's surgeons, who each agreed with the FCE results of a reduced range of light exertion, as cited above. Finally, it is inconsistent with the claimant's reports of performing light household cleaning tasks, as cited above. For these reasons, [Nurse] Hammon's opinion is only somewhat persuasive.

(Tr. 25 (citation omitted).)

Here, the ALJ once again properly considered the medical

evidence of record and the relevant factors of supportability and consistency. She expressly articulated the basis of her evaluation and her findings with respect to the persuasiveness of this opinion as well. The plaintiff quibbles with the ultimate outcome of the ALJ's evaluation of the opinion, arguing that various factors support a contrary conclusion, but it is clear that the ALJ's findings with respect to Nurse Hammon's opinion are supported by substantial evidence.

Accordingly, we find the ALJ's evaluation of the opinion of examining nurse practitioner Hammon is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 5. Consultative Examining Psychologist

On September 22, 2020, Smith was seen and examined by a consultative examining psychologist, Stacy Trogner, Psy.D. On examination, Dr. Trogner observed a cooperative demeanor and "fair" manner of relating overall with others. Dr. Trogner noted that Smith had informed her that she had experienced a panic attack that morning, so she took a medication to assist her with her anxiety, which had her

feeling "out of it" at the time of the mental status examination. Dr. Trogner found Smith's quality of voice to be monotonous, and she noted that Smith's expressive and receptive language appeared to have been affected by her anti-anxiety medication. At times, Dr. Trogner observed, Smith appeared confused, stopping mid-sentence and stating, "I'm not sure," or "I don't understand." Dr. Trogner observed a depressed affect and noted that, when asked to describe her mood, Smith reported feeling down, possibly more than usual due to the medication she took to address her panic attack earlier that morning. On examination, Dr. Trogner found clear sensorium and orientation to person, place and time. She found that Smith's attention and concentration appeared to be mildly impaired due to emotional distress, noting that Smith had some difficulty with serial-7s and serial-3s. All other observations were normal or fair. Dr. Trogner recorded mental health diagnoses of (a) major depressive disorder, recurrent and moderate, (b) panic disorder, and (c) attention deficit hyperactivity disorder, inattentive type, with guarded prognosis given Smith's current symptomatology.

Dr. Trogner also completed an agency form report on Smith's ability to do work-related activities. In the area of understanding, remembering,

and carrying out instructions, Dr. Trogner opined that, due to anxiety symptoms, Smith had moderate limitations in her ability to understand, remember, and carry out complex instructions or to make judgments on complex work-related decisions, and mild limitations in her ability to understand, remember, and carry out simple instructions or to make judgment on simple work-related decisions. In the area of interacting with others, Dr. Trogner opined that, due to depression and anxiety symptoms, Smith had mild limitations in her ability to interact appropriately with supervisors, co-workers, or the general public or to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Trogner additionally found that, in the area of concentrating, persisting, or maintaining pace, Smith's mental health impairments caused her to be "distracted."[9] (Tr. 735–47.)

In evaluating the opinion of Dr. Trogner, the ALJ found that:

> The opinion of the consultative psychological examiner, Stacy Trogner, Psy.D., is somewhat persuasive. She opined the claimant had mild-to-moderate restrictions in remembering, mild restrictions in interacting with

---

[9] Despite a prompt inviting her to "identify the capability and describe how it is affected," this one-word response represents the entirety of her Dr. Trogner's opinion with respect to the functional areas of concentrating, persisting, or maintaining pace and adapting or managing oneself.

others, and that the claimant's concentration was "distracted." Her opinion is somewhat supported by her examination of the claimant, which revealed intact memory but mildly impaired concentration and thought processes with mood disturbances. It is also supported by the claimant's slowed receptive speech in the setting of medication side effects from diazepam, as cited above. Nevertheless, her opinion is somewhat inconsistent with the claimant's subjective reports of social anxiety, and [her treating psychiatrist's] routine observations of poor eye contact, intact grooming, unremarkable speech and associations, normal though process and content, intact memory, normal judgment and insight, a depressed mood, restricted affect, and unremarkable attention/concentration. For these reasons, Dr. Trogner's opinion is only somewhat persuasive.

(Tr. 24 (citations omitted).)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

### 6. *Treating Family Physician Opinion*

On May 10, 2021, Smith's treating family physician, Kimberly Lundsen, Ph.D., M.D., completed a "Medical Source Statement of Ability to Do Work-Related Activities." Dr. Lundsen noted that Smith had been a patient of the same clinical practice for 18 years, where Smith had been seen every two to three months. Dr. Lundsen reported diagnoses of major anxiety disorder, major depressive disorder, bipolar disorder, and

degenerative disc disease, with a "fair" prognosis. Dr. Lundsen opined that Smith was capable of sitting up to two hours per 8-hour workday and standing or walking less than one hour per 8-hour workday, provided Smith was permitted to alternate between sitting and standing every five minutes. Dr. Lundsen opined that Smith was capable of lifting or carrying less than 10 pounds only rarely, and she could push or pull arm or foot controls only occasionally. Dr. Lundsen opined that Smith was capable of handling, fingering, or feeling only occasionally, and she could never reach. She reported that Smith's pain or other symptoms were only rarely severe enough to interfere with attention and concentration needed to perform even simple work tasks. Dr. Lundsen found that Smith was required to avoid humidity or wetness, hazards such as machinery or heights, and other unspecified conditions. She opined that Smith would require frequent unscheduled breaks and should elevate her legs when seated. Dr. Lundsen indicated that Smith would be absent from work more than three days per month due to her impairments or treatment. (Tr. 965–67.)

Upon review, the ALJ found this medical opinion unpersuasive. In particular, the ALJ found

Dr. Lundsen's opinion is unsupported because she did not cite any clinical signs to support her opinion, except for a "flat" affect or "tired" appearance. Her opinion is also highly inconsistent with the objective medical evidence. For example, in September 2020, the claimant's treating pain specialist, Kyle Hummerston, D.O., observed the claimant having some decreased motion in the lumbar spine but full motor strength in the lower extremities and intact sensation. The claimant contemporaneously denied symptoms radiating into her lower extremities. Likewise, in January 2020, neurosurgeon William Beutler, M.D., observed the claimant with full motor strength in the extremities, intact coordination, intact sensation (less paresthesias in the left thigh), negative leg raises, and a normal gait. Accordingly, for these reasons, Dr. Lundsen's opinion is unpersuasive.

(Tr. 25 (citations omitted).)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

## B. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of Smith's symptoms, including subjective statements or testimony by Smith herself. *See generally* 20 C.F.R. §§ 404.1502(i), 416.902(n) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms

is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting

effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 21–26.) This included the plaintiff's statements regarding the limiting effects of her symptoms. Based on her consideration of the whole record, the ALJ properly concluded that, while Smith's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21.)

The plaintiff argues that the ALJ erred in this symptom evaluation because she failed to expressly acknowledge Smith's "strong" work history, which includes 135 covered quarters of earnings and 34 years of

continuous employment prior to her alleged disability onset date. But while the plaintiff's work history must be considered as part of the ALJ's broader view of the record in evaluating his or her symptoms, *see, e.g.*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . ."), there is no error in an ALJ's failure to explicitly discuss the plaintiff's work history in the ALJ's evaluation of the plaintiff's symptoms. *See Sanborn v. Comm'r of Soc. Sec.*, 613 Fed. App'x 171, 177 (3d Cir. 2015); *Corley v. Barnhart*, 102 Fed. App'x 752, 755 (3d Cir. 2004); *Pelton v. Comm'r of Soc. Sec.*, Civil No. 4:19-CV-1164, 2020 WL 2992041, at *9 (M.D. Pa. June 4, 2020). As this court has previously explained:

> A claimant's work history is . . . one of the many factors the ALJ is to consider in assessing an individual's subjective complaints, [but] the ALJ is not required to equate a long work history with credibility. Furthermore, it is well established that the ALJ need not address every piece of evidence in the record.

*Pelton*, 2020 WL 2992041, at *9 (citations omitted). Indeed, here, it is evident from the ALJ's decision that the ALJ was well aware of the plaintiff's long work history, as the ALJ specifically cited the plaintiff's detailed earnings report, her work history report, and the plaintiff's own testimony in discussing her past relevant work. (*See* Tr. 26.)

All that remains, then, are quibbles with the outcome of the ALJ's analysis of the evidence of record. But it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and it is clear that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Smith was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: March 30, 2023                    **_s/Joseph F. Saporito, Jr._**
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge